UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSEFINA MARICHAL, *Individually and on
Behalf of All Other Persons Similarly Situated*,

                                   Plaintiffs,               **ORDER**
             -against-                                  17-CV-6756-SJB

ATTENDING HOME CARE SERVICES, LLC,
DAVID INZLICHT, GWENDOLYN RODRIGUEZ,
DENISE RODRIGUEZ, and JOHN DOES #1-10,

                                   Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

       This is a Fair Labor Standards Act ("FLSA") collective action and New York Labor Law ("NYLL") case. Before the Court is the parties' joint motion for settlement approval of FLSA collective action claims under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Despite the opportunity to remedy defects in their original settlement agreement and *Cheeks* submission, the parties failed to do so and have submitted settlement papers that compound their previous errors. Because the parties misapprehend how a collective action under FLSA operates—mistaking it for a class action—the motion for approval is denied.

FACTUAL AND PROCEDURAL BACKGROUND

       Plaintiff Josefina Marichal ("Marichal") filed a Complaint on November 17, 2017, on behalf of herself and as "class representative of other employees similarly situated" against Defendants Attending Home Care Services, LLC, David Inzlicht, Gwendolyn Rodriguez, Denie Rodriguez, and John Does #1–10 (collectively "Defendants"). (Compl. dated Nov. 17, 2017, Dkt. No. 1 at 1). The Complaint sought recovery of unpaid minimum and overtime wages and liquidated damages pursuant to FLSA, 29 U.S.C.

§§ 201 *et seq.*, as well as minimum and overtime wages and spread of hours pay under the NYLL, N.Y. Lab. Law §§ 650 *et seq.*

On August 10, 2019, the parties stipulated to conditional certification of a collective action under FLSA, 29 U.S.C. § 216(b). (Notice dated Aug. 10, 2018, Dkt. No. 35). Specifically, the parties agreed to send notice, and thereby give an opportunity to join the lawsuit, to

> [c]urrent and former employees of Defendants who worked as home health aides, who performed any work for Defendants from January 1, 2015 through and including October 13, 2015 (the "collective time period"), who were paid by Attending Homecare Services, LLC overtime at a rate of less than one and one half times their regular rate of pay ("FLSA Plaintiffs").

(*Id.* at 1). The Court approved the parties' proposed notice and opt-in form on August 14, 2019. (Order dated Aug. 14, 2018). Nine individuals (the "Opt-In Plaintiffs," and together with Marichal, "Plaintiffs") opted into the case over the course of a several months.[1]

On June 5, 2019, counsel notified the Court that a settlement had been reached. (Mot. to Adjourn Conference dated June 5, 2019, Dkt. No. 47 at 1). The Court directed the parties to file a motion for approval under *Cheeks*. (Order dated June 6, 2019). The case was reassigned to the undersigned after the parties consented to jurisdiction by a

---

[1] (*See* Consent dated Oct. 23, 2018, Dkt. No. 37; Consent dated Nov. 5, 2019, Dkt. No. 38; Consent dated Nov. 9, 2018, Dkt. No. 39; Consent dated Nov. 13, 2018, Dkt. No. 40; Consent dated Nov. 19, 2018, Dkt. No. 41; Consent dated Dec. 19, 2018, Dkt. No. 42; Consent dated Jan. 4, 2018, Dkt. No. 43; Consent dated Jan. 11, 2018, Dkt. No. 44; Consent dated Feb. 4, 2018, Dkt. No. 45).

The Opt-In Plaintiffs are Rosalia Alcantara, Juan Ventura Morales, Jamal Hudaykuliyeva, Carlos Rodriguez, Grace Twumasi, Ibrahim Badiaru, Debra Smith, Katiana Vernier, Ruth del Rosario Arias, Rebecca Shilet, Roudline Severe, Victoria Manzueta, Christa Elizee, Salustriana Gomez Sanchez, Theresa Agyeman Budu, Solange Perez Herrera, Josefina Pena Rodriguez, Natalie Clark, Charles Josette, and Paulette McKain.

U.S. Magistrate Judge, (Consent to Jurisdiction by US Magistrate Judge dated Aug. 7, 2019, Dkt. No. 52 at 1), and Marichal filed a motion for approval of the parties' settlement agreement (the "Settlement Agreement" or "Agreement") under *Cheeks* on August 12, 2019, (Mot. for Settlement Approval dated Aug. 12, 2019, Dkt. No 53; Settlement Agreement dated Aug. 12, 2019, attached as Ex. A to Mot. for Settlement Approval, Dkt. No. 53).

An in-person *Cheeks* motion hearing was held on September 9, 2019. (Min. Entry & Order dated Sept. 9, 2019). At the hearing, the Court identified several issues with the proposed Settlement Agreement. Primarily, the structure of the Agreement treated the FLSA collective Opt-In Plaintiffs like members of a class action: the Opt-In Plaintiffs would be given an opportunity to opt-out of the settlement; if they failed to do so, they would be bound by its terms. The Agreement also contemplated this Court opining on the fairness of the resolution before the Opt-In Plaintiffs were given an opportunity to be heard. (*See* Tr. dated Sept. 9, 2019, Dkt. No. 59 at 3:14–8:25). The Agreement was not executed by each Opt-In Plaintiff, and there was nothing indicating that Plaintiffs' counsel had spoken with each Opt-In Plaintiff about the settlement. (*See id.* at 18:22–20:04, 29:05–30:20).

The Court also addressed the attorney's fees request, which amounted to nearly 61% of the gross settlement, a percentage untenable with *Cheeks* and its progeny. (*Id.* at 2:17–3:18). The Agreement also contained a general release, another feature also inconsistent with *Cheeks*. (*Id.* at 3:03–3:13). At the hearing, the Court also learned that the parties intended any attorney's fees not approved by the Court to revert back to the Defendants, a feature, like the high attorney's fees percentage, not adequately addressed in the motion papers. (*Id.* at 23:22–26:04).

3

On November 13, 2019, Marichal filed another motion for approval of a settlement.  (Joint Mot. for Settlement Approval dated Nov. 13, 2019 ("Mot."), Dkt. No 58; Settlement Agreement dated Nov. 12, 2019 ("Settlement Agreement"), attached as Ex. A to Mot. for Settlement Approval, Dkt. No. 57).  Included as attachments are the Settlement Agreement, (Settlement Agreement, Dkt. No. 57), a "Notice of Collective Action Settlement and Right to Opt Out of Settlement or to Appear and Object at Settlement Hearing" (the "Notice"), (attached as Ex. A to Settlement Agreement, Dkt. No. 57), a "Proposed Order Preliminarily Approving Class Settlement," (attached as Ex. B to Settlement Agreement, Dkt. No. 57), and a "Proposed Order providing Final Approval of Settlement," (attached as Ex. C to Settlement Agreement, Dkt. No. 57).

This Settlement Agreement retains almost all the problematic features of the previously submitted Agreement.  It purports to be an agreement between Defendants and Marichal on behalf of herself and Opt-In Plaintiffs. (Settlement Agreement at 1).  It uses an "opt-out" settlement process.[2]  (*Id.* ¶ 3(a)).  Again, only Marichal and Defendant David Inzlicht, on behalf of himself and Defendant Attending Home Care Services, LLC, signed the Agreement; none of the Opt-In Plaintiffs signed the Agreement.  (*See id.* at 15).

---

[2] "Not later than fourteen (14) days after the Court's preliminary approval of this Agreement, Plaintiff shall send the Notice of Settlement Form attached [to the Settlement Agreement] as Exhibit A to each Plaintiff other than the Named Plaintiff ('Opt-In Plaintiffs').  The deadline for each Plaintiff to opt-out of the Settlement shall be 20 days after it is mailed to such Plaintiff ('Settlement Opt-Out Deadline')." (Settlement Agreement ¶ 3(d)).  "Any Opt-In Plaintiff may request exclusion from the Settlement by 'opting out.'" (*Id.* ¶ 3(e)).  "[A]ll Opt-In Plaintiffs are Participating Opt-In Plaintiffs[,]" meaning each Opt-In Plaintiff would receive the funds allocated for them in the Agreement, "unless they opt-out of this Agreement." (*Id.* ¶ 3(f)).

4

There are additional elements of the Agreement that are significant. The Agreement provides that "[a]fter the execution of this agreement, the Parties will promptly submit this Agreement to the Court for preliminary approval and for an order scheduling a settlement hearing." (*Id.* ¶ 3(b)). The Agreement contemplates a final fairness hearing would then be held. (*Id.* ¶ 3(a)). The Agreement does now include limited releases of claims. (*See id.* ¶¶ 4, 5, 6).

For the reasons stated below, the motion to approve the Agreement is denied.

## DISCUSSION

I.  Legal Standards for Approving Collective Action Settlement

FLSA is unique in its use of a "collective action" mechanism. Under a two-step certification process, a Court first determines whether "conditional certification" is appropriate, *i.e.* whether there is a group of employees similarly situated to the original plaintiff who should receive notice about the lawsuit. *Accord Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."). Once a Court conditionally certifies a FLSA collective, any similarly situated employees may opt into the case and become plaintiffs. *See* 29 U.S.C § 216(b). "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555.

The Court can conclude that the opt-in plaintiffs are in fact similarly situated, either following motion practice by the parties or through its review of a proposed settlement agreement (which includes a fairness hearing). *Compare McGlone v.*

5

*Contract Callers, Inc.*, 49 F. Supp. 3d 364, 366, 367 (S.D.N.Y. 2014) (denying motion to decertify conditionally certified collective and granting final certification because plaintiffs were similarly situated), *with Summa v. Hofstra Univ.*, No. 07-CV-3307, 2012 WL 13046732, at *2 (E.D.N.Y. Feb. 22, 2012) ("The Court has determined that the [opt-in and original plaintiffs] are similarly situated within the meaning of Section 16(b) of the FLSA for the purposes of determining whether the terms of settlement are fair." (quotations and citations omitted)). Alternatively, "[t]he action may be 'de-certified' . . . and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

Rule 23 class actions also provide for joining of multiple plaintiffs through certification. *See* Fed. R. Civ. P. 23(c). After a class is certified, class members are automatically joined in the suit. Notice is distributed to class members *after* a settlement or other resolution is reached. As such, certification of a FLSA collective is not equivalent to certification under Rule 23. Certification under FLSA is primarily a "case management" device that, in the first instance, facilitates notice to potential plaintiffs. *See Myers*, 624 F.3d at 555 n.10 (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989)); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("Under the FLSA, by contrast [to Rule 23], 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." (citations omitted) (citing *Hoffman-La Roche*, 493 U.S. at 171–72)). When a collective action is conditionally certified, a putative member of the collective does not join the suit unless he affirmatively "opts-in." *See*

6

§ 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

This is a significant distinction. "This difference means that every plaintiff who opts in to a collective action has *party status*, whereas unnamed class members in Rule 23 class actions do not. Consequently, although the original plaintiffs in a collective action may pursue the suit on a representative basis, each FLSA claimant has the right to be present in court to advance his or her own claim." 7B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1807 (3d ed. 2010) (footnotes omitted); *see also Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) ("The plain language of § 216(b) supports that those who opt in become party plaintiffs upon the filing of a consent [.]"); *Pettenato v. Beacon Health Options, Inc.*, No. 19-CV-1646, 2019 WL 5587335, at *9 (S.D.N.Y. Oct. 25, 2019) ("[A]n FLSA collective action is more comparable to . . . [a] mass tort action . . . than to a Rule 23 class action . . . because, in an FLSA collective action, 'every plaintiff who opts in to a collective action has party status'. . . . '[A]ggrieved workers act as a collective of *individual* plaintiffs with *individual* cases.'" (citations and alterations omitted) (first quoting Wright & Miller, *supra* § 1807) (then quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018))); *Almanzar v. C & I Assocs., Inc.*, 175 F. Supp. 3d 270, 279 n.3 (S.D.N.Y. 2016) ("Individuals who have opted-in to an FLSA collective action have 'party status' and are able to advance their own claims.").

The distinction between an employee's party status (in a collective action) and status as a class member (in a Rule 23 action) implicates whether the original plaintiff may settle the case on behalf of other employees. It is long established that a client must

7

give his consent to settle. *See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 986 F.2d 15, 19 (2d Cir. 1993) ("The Supreme Court recognized long ago that the decision to settle a case rests with the client alone. This circuit has reiterated the principle on many occasions." (citations omitted) (citing *United States v. Beebe,* 180 U.S. 343, 350–53 (1901))). As a general matter, once a Rule 23 class is certified, unless the employee "opts out," as a class member he may be bound by actions taken by the class representative, including a settlement of the case. *Sipas v. Samm's Fishbox, Inc.*, No. 05-CV-10319, 2006 WL 1084556, at *1 (S.D.N.Y. Apr. 24, 2006) ("[In] a Rule 23 class action. . . potential plaintiffs must opt out of the action in order not to be bound by the final settlement or judgment."). "A collective action, on the other hand, is not a comparable form of representative action. Just the opposite: Congress added the FLSA's opt-in requirement with the express purpose of 'banning' such actions under the FLSA." *Pettenato*, 2019 WL 5587335, at *9 (quoting *Campbell*, 903 F.3d at 1105).

While consent to a settlement may be inferred in a class action from the class member's failure to opt-out, consent from silence is insufficient for an employee who is a party to a collective action. That is, the named plaintiff and his counsel in a collective action cannot settle a case on behalf of an opt-in plaintiff: the affirmative assent of each opt-in plaintiff—as a party to the case—is required. *Hood v. Uber Techs., Inc.*, No. 16-CV-998, 2019 WL 93546, at *3 (M.D.N.C. Jan. 3, 2019) ("Attorneys generally must consult with their clients before settling a matter on their behalf. They have no implied authority to settle a matter without the client's consent, and no specific provision of the Fair Labor Standards Act establishes a different rule for collective actions under the FLSA. Thus, counsel for the opt-in class may not agree to a class-wide settlement

8

without the consent of each class member." (citations omitted)), *aff'd sub nom. Haskett v. Uber Techs., Inc.*, 780 F. App'x 25 (4th Cir. 2019); *cf. Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 249 (2d Cir. 2011) (recognizing the inherent difference and "'conflict' between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23"). As one District Court explained:

> [I]n an FLSA "collective action" every plaintiff, original or "opt-in", is free to pursue his or her individual claim. . . . [E]ach plaintiff can choose his or her counsel, accept or reject a settlement proposal, and decide to go to trial. In these respects, an "opt-in" plaintiff is no different from the original plaintiff who filed the Complaint. The "opt-in" plaintiff may choose to ride on the coattails of the original plaintiff or be represented by the counsel for the original plaintiffs, but he or she is not obligated to do [so]. . . . In a FLSA "collective action", . . . each FLSA plaintiff is free to settle or litigate his or her own claim regardless of what the original plaintiff or his/her counsel does. As a result, each plaintiff is empowered to assess the merits and drawbacks of a settlement proposal [.]

*Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1115–16 (D. Colo. 2017) (footnote omitted); *see, e.g.*, *Roberts v. TJX Cos.*, No. 13-CV-13142, 2016 WL 8677312, at *3 (D. Mass. Sept. 30, 2016) ("The FLSA Settlement Classes are governed by the 'collective action' procedures set forth in the FLSA, which require members of the collective action to affirmatively 'opt in' to a collective action settlement. . . . In contrast, the NYLL Settlement Classes are governed by the class action procedures set forth in Fed. R. Civ. P. 23. Under Rule 23, members of the NYLL Settlement Classes must affirmatively 'opt out' of the NYLL Settlement Classes to be excluded from the Settlement. . . . If they fail to do so, they will be bound by the Settlement terms, whether or not they choose to file a claim and pursue a settlement check." (citations omitted)).

Understanding that parties may wish to resolve all FLSA claims together and aware of the practical difficulties of dealing with a large number of opt-in plaintiffs, courts approve different procedural mechanisms to facilitate opt-in plaintiffs' consent to

9

a settlement. *See, e.g.*, *Hood*, 2019 WL 93546, at *3 ("In FLSA cases, opt-in class members often authorize class counsel or the named plaintiff to settle the case for them, and courts have approved such *explicit* authorizations." (emphasis added)). One common approach is use of a two-tiered procedure: first, the parties file a motion for preliminary approval of the settlement and request approval of a notice. *See, e.g.*, *Hall v. ProSource Techs., LLC*, No. 14-CV-2502, 2016 WL 1555128, at *3 (E.D.N.Y. Apr. 11, 2016) ("In a September 29, 2015 Order (the 'Preliminary Approval Order'), this Court granted the Preliminary Approval Motion in its entirety, authorized dissemination of the Notice and Claim Form, and set a final fairness hearing for January 6, 2016."); *Walsh v. CorePower Yoga LLC*, No. 16-CV-5610, 2017 WL 589199, at *4 (N.D. Cal. Feb. 14, 2017) (approving notice of settlement that provided "Collective Members do not opt out of the Settlement; they must affirmatively consent to the terms of the Settlement Agreement by returning valid consent to join and release forms."). After preliminary approval is granted, notice is sent to extant collective members, giving them the opportunity to opt into the settlement, as well as to other employees who have not previously joined to give them an opportunity to opt into the collective and accede to the settlement. As a second step, the parties file a motion for final approval, and the Court conducts a final fairness hearing, giving all opt-in plaintiffs the opportunity to be heard by the Court. *See, e.g.*, *Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004, 2016 WL 10537385, at *1 (S.D.N.Y. May 16, 2016) (granting final approval to FLSA settlement of a collective action certified for the purposes of settlement and where opt-in period began after preliminary approval of settlement). Thus, an opt-in plaintiff is given an opportunity to affirmatively join the settlement, just as they affirmatively joined the collective. *See Brack v. MTA N.Y.C. Transit*, No. 18-CV-846, 2019 WL 1547258, at *18–19 (E.D.N.Y. Apr. 9, 2019) ("Like any

10

other § 216(b) action, the *collective* opt-in members must affirmatively choose to join the settlement. . . . That is the inherent nature of a proposed settlement of a collective action, and an employee must affirmatively opt in to be bound and receive settlement proceeds. Such opt-in collective action settlements have been routinely approved by judges in this Circuit."), *appeal withdrawn sub nom. Sterbenz v. Brack*, No. 19-1304, 2019 WL 3526374 (2d Cir. July 16, 2019).

In addition, FLSA demands that at both the preliminary and final approval stages, district courts are required to examine the terms of the settlement for its fairness. That is, a *Cheeks* review for fairness is required both when the preliminary notice is distributed and at a final hearing after those who wish to have opted-into the settlement. *See, e.g.*, *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 82 (E.D.N.Y.) ("That the parties have proposed a FLSA *collective* action settlement and NYLL *class* action does not mean that *Cheeks* review can be avoided at this stage."), *reconsideration denied*, 381 F. Supp. 3d 239 (E.D.N.Y. 2019); *Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15-CV-1347, 2018 WL 1633027, at \*6 (E.D.N.Y. Mar. 30, 2018) (denying preliminary approval of class and FLSA collective action settlement because the procedure proposed in the settlement agreement made "no sense in the context of *Cheeks*"); *Sanders v. CJS Sols. Grp., LLC*, No. 17-CV-3809, 2018 WL 620492, at \*4 (S.D.N.Y. Jan. 30, 2018) (denying motion for preliminary approval of class and FLSA collective action settlement under *Cheeks* where the proposed settlement agreement contained a nonmutual, broad release and the parties failed to explain the range of possible recovery for any plaintiff); *Zeller v. PDC Corp.*, No. 13-CV-5035, 2016 WL 748894, at \*2 (E.D.N.Y. Jan. 28, 2016) ("The record makes clear that the proposed settlement is the result of extensive, arms-length negotiations after the parties engaged

in significant discovery, and that it reasonably resolves a bona fide dispute. I therefore respectfully recommend that the court provisionally approve the settlement of the plaintiffs' FLSA collective claims."), *report and recommendation adopted*, 2016 WL 775762 (Feb. 25, 2016).

It is with this legal background that the Court reviews the Settlement Agreement.

II.     The Settlement Agreement Is Procedurally and Substantively Flawed

The Settlement Agreement and motion papers here imply that because Opt-In Plaintiffs have consented to join the case, the parties may settle via opt-out procedure to bind those Plaintiffs to the settlement. (Settlement Agreement ¶ 3(a) ("Because the Named and Opt-In Plaintiffs have already filed consent to join forms with the Court pursuant to 29 U.S.C. §216(b) and the Named Plaintiff has given her consent to the settlement. . . . Plaintiffs' Counsel will send a Notice to the Opt-In Plaintiffs . . . notifying them of the settlement . . . and their ability to opt out of the settlement [.]"); Br. at 6–7 ("Here the settlement has the added protection that it permits the collective members who previously opted into the action to opt out of the settlement.")). This is incorrect. Only Marichal signed the Settlement Agreement, and there is no evidence that Opt-In Plaintiffs consented to or were aware of the Agreement.

For the Opt-In Plaintiffs to be bound by the Agreement, they must be given notice and the opportunity to opt-in affirmatively and consent to the Agreement. Thus, procedures like those in the Agreement, which provide that a plaintiff is bound unless he or she opts out, (*see* Settlement Agreement 3(f) ("Plaintiffs who do not opt out of the Settlement shall be defined collectively as 'Participating Opt-In Plaintiffs.' . . . [A]ll Opt-In Plaintiffs are Participating Opt-In Plaintiffs unless they opt-out of this Agreement.")), are improper. It must be an opt-in, not an opt-out, settlement. And unless all

12

signatures are obtained beforehand, the option to opt into the settlement must be done through notice, with a period in which to opt-in. Should any of the current Opt-In Plaintiffs choose not to opt-in, *i.e.*, accept the settlement, they cannot be bound by its terms. The mechanism proffered in the Agreement has the case operate like a class action, which this is not, and be inconsistent with the opt-in process required for a collective action.

The parties attempt to justify their novel approach but only add confusion and illogic to the settlement and approval structure. The motion papers simultaneously provide proposed orders for "preliminary" and "final" approval.[3] It is improper to approve the settlement in either posture. The parties cannot collapse preliminary and final approval into a single step.[4] A final approval requires information gleaned from the actions that follow distribution of notice. There is typically a preliminary approval hearing, with a preliminary *Cheeks* evaluation, followed by notice and an opt-in period, and then a final hearing. As an example, in *Brack*, a case the parties cite to but misconstrue, the Court first granted preliminary approval of the settlement, then set a final approval hearing to consider a final joint motion for settlement approval. *Brack*, 2019 WL 1547258, at *2 ("The Court held the preliminary approval hearing on

---

[3] The first iteration of the motion similarly referred to *Cheeks* approval, without any mention of preliminary or final approval. (*See* Mot. for Settlement Approval dated Aug. 12, 2019, Dkt. No. 53 at 1 ("Plaintiffs and Defendants hereby move for court approval of their fully executed settlement agreement which is attached as Exhibit A as per the Second Circuit's decision in [*Cheeks*.]")).

[4] A single-step approval under *Cheeks* would be appropriate if the Court had before it a settlement agreement signed by all Opt-In Plaintiffs or a declaration indicating that each Opt-In Plaintiff assented to the terms of the Settlement Agreement. It does not.

13

December 5, 2018, approving the preliminary settlement agreement and notices, and held a final approval hearing on April 9, 2019.").

To the extent the parties actually did want to structure their settlement like *Brack* or other two-step FLSA collective action settlement cases, they do not explain why *preliminary* approval of their agreement is appropriate. The collective action settlement cases that the parties cite are *final* approval cases where a court granted final approval only after previously granting preliminary approval of a collective action settlement and held a final fairness hearing. (*See* Mot. at 6–8); *Hall*, 2016 WL 1555128, at *3, *4 ("[T]his Court granted the Preliminary Approval Motion in its entirety, authorized dissemination of the Notice and Claim Form, and set a final fairness hearing. . . . [T]he Final Approval Motion is granted."); *Viafara v. MCIZ Corp.*, No. 12-CV-7452, 2014 WL 1777438, at *2, *8 (S.D.N.Y. May 1, 2014) ("[T]his Court entered an Order preliminarily approving the MCIZ Settlement on behalf of the class set forth therein . . . , preliminarily certifying the settlement class under New York Labor Law, conditionally certifying the settlement class under FLSA. . . . The Court hereby grants Plaintiffs' Motions for Final Approval and approves the settlement as set forth in the Settlement Agreement."); *Willix v. Healthfirst, Inc.*, No. 07-CV-1143, 2011 WL 754862, at *1, *2 (E.D.N.Y. Feb. 18, 2011) ("[T]his Court entered an Order preliminarily approving the settlement and authorizing notice . . . . The Court held a fairness hearing . . . . The Court hereby grants the Motion for Final Approval and approves the settlement [.]"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 472, 476 (S.D.N.Y. 2013) ("[T]his Court entered an Order preliminarily approving the settlement . . . . The Court held a fairness hearing . . . . The Court hereby grants Plaintiffs' Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.").

14

Quite separate and apart from these procedural problems, the Settlement Agreement would fail the substantive *Cheeks* review required for preliminary approval. As the Court previously explained to the parties, the attorney's fees sought are beyond the range of permissible fees approved in this District. Plaintiffs' counsel nonetheless has doubled down on recovering more than half the gross settlement but fails to justify those fees: he cites exclusively pre-*Cheeks* case law for his articulation of the legal standards, (*see* Mot. at 11), and fails to cite a single case that supports a request of over 50% of the gross settlement amount, (*id.* at 12–13).[5]

In addition, the Court would be unable to assess the range of recovery—the first step in *Cheeks* review, *see, e.g.*, *Smelser v. Martin's Famous Pastry Shoppe, Inc.*, No. 17-CV-1813, 2019 WL 3006539, at *1 (D. Conn. July 10, 2019) ("In determining whether the proposed settlement is fair and reasonable, a court should consider . . . : (1) the plaintiff's range of possible recovery.")—because the parties only provide information about Marichal's range of recovery, (*see* Br. at 8), without information about the Opt-In Plaintiffs and how they would benefit or not from the settlement. To indicate the range of recovery, a plaintiff must at least indicate "each party's estimate of the number of hours worked or the applicable wage." *Lopez v. Nights of Cabiria, LLC*, 96 F.Supp.3d 170, 176 (S.D.N.Y. 2015) (quoting *Mamani v. Licetti*, No. 13-CV-7002, 2014 WL 2971050, at *2 (S.D.N.Y. July 2, 2014) ("[A]lthough the parties dispute the amount that Plaintiff is owed (or whether Plaintiff is owed anything at all), the parties do not provide the Court with each party's estimate of the number of hours worked or the applicable

---

[5] Counsel's reliance on *Luo v. L & S Acupuncture, P.C.*, 649 F. App'x 1 (2d Cir. 2016), is misplaced—there, the Second Circuit analyzed an award of attorney's fees after a Rule 68 offer of judgment was entered, not the provision for attorney's fees in a settlement agreement. (*See* Mot. at 12).

15

wage. Accordingly, the Court cannot approve the Settlement Agreement at this time.")). There are various methods to proffer such facts: by indicating what was alleged in the Complaint or the evidence shown through discovery, among others. *See Fu v. Mee May Corp.*, No. 15-CV-4549, 2017 WL 4685112, at *2–3 (S.D.N.Y. Oct. 18, 2017) (using plaintiffs' declarations to compare potential recovery with actual recovery).

What the parties have provided is inadequate. The Court lacks information on the potential or actual wage rate or the hours worked for each Opt-In Plaintiff. *See, e.g.*, *Douglas*, 371 F. Supp. 3d at 83–84; *Fishwick v. RMJM, Inc.*, No. 14-CV-904, 2015 WL 13649463, at *3 (S.D.N.Y. June 12, 2015) ("[T]he parties have failed to provide the Court with the grounds for the estimate of Plaintiffs' alleged out-of-pocket wages. . . . There are no supporting declarations or exhibits substantiating [their] statement. Nor is there an estimate of the number of hours worked or the applicable wage demonstrating how Plaintiffs calculated such a figure. Without further information about Plaintiffs' maximum possible recovery, the Court cannot discharge its duty to determine whether the settlement amount is fair and reasonable as to each Plaintiff." (quotations, citations, and footnote omitted)). The Court therefore cannot conduct even a preliminary *Cheeks* review. *E.g.*, *Smelser*, 2019 WL 3006539, at *2 ("I cannot approve the . . . Agreement . . . in its current form because the parties have not provided enough information to evaluate the plaintiff's range of possible recovery or how the proposed payments to collective group members relate to that range." (quotations omitted)); *Chen*, 2018 WL 1633027, at *3 ("The parties have not provided the Court with any information that would allow the Court to compare the amount of money any particular individual would receive under the Settlement Agreement with the amount that individual would receive if the case were to proceed to trial and the individual were to be awarded full recovery.").

16

III. <u>How to Cure the Defects</u>

Should the parties be inclined to use a two-step approach, like in *Brack*,[6] and further amend the Settlement Agreement to be consistent with *Cheeks*, the parties must cure the defects identified in this Order by doing the following:

1. Submit a motion for preliminary approval of their collective action Settlement Agreement with sufficient explanation for why such approval is appropriate.

2. Restructure the settlement to provide for an opt-in procedure by which Opt-In Plaintiffs may either affirmatively consent to the settlement or otherwise not be bound by it. The Settlement Agreement must also provide Opt-In Plaintiffs with an opportunity to be heard by the Court and object to the settlement.

3. Request a final fairness hearing at which Opt-In Plaintiffs must be given an opportunity to be heard.

4. Submit a notice to be distributed to current Opt-In Plaintiffs regarding the settlement that clearly explains that

    a. This is a collective action settlement;

    b. Each Opt-In Plaintiff has the choice to opt-in and consent to the settlement;

    c. If they do not opt-in, the Opt-In Plaintiffs will not be bound by the Settlement Agreement;

    d. Each Opt-In Plaintiff has the right to be heard at the hearing regardless of their choice to join the settlement;

    e. An Opt-In Plaintiff may object to the settlement and be heard at a final fairness hearing regarding their objection. While the current brief and

---

[6] As previously stated, the parties could proceed with an alternative procedure, but any settlement structure different than the two-tiered approach would need to be supported by sufficient explanation and case law citations to justify its compliance with FLSA. The parties may file a settlement agreement signed by Marichal, all Opt-In Plaintiffs, and Defendants, or Plaintiff's counsel may file a declaration attesting to his explanation of the terms of a settlement agreement to each Opt-In Plaintiff and swearing to their consent to opt into such settlement, again, with sufficient explanation. Regardless of the structure, the parties must cure the defects in substance, as required by *Cheeks*, and use a procedural mechanism consistent with a collective action, not a class action, process.

> Agreement reference the ability to object to the settlement, (*see* Br. at 10; Settlement Agreement ¶ 3(a)), there is only an explanation for how the opt-out procedure works in the Agreement, (Settlement Agreement ¶ 3(e)), and the brief does not explain the objection process.  The Notice attached to the Settlement Agreement describes an objection process, but that description states, "You may not appear at the Fairness Hearing unless you file a timely Written Objection that complies with the procedures set out in this notice." (Notice at 2).  This restriction on who may be present at the hearing is impermissible.

5. Submit a claim/opt-in form, to be distributed to current Opt-In Plaintiffs, that an Opt-In Plaintiff may complete and return to opt in and make a claim under the settlement.

6. Provide sufficient information to allow the Court to determine the permissible range of recovery.

7. Explain why any request for attorney's fees is appropriate under *Cheeks* and its progeny, particularly in light of the Court's analysis in this Order of the cases cited in the current motion papers.

## CONCLUSION

The settlement presented for approval is hereby rejected.  The parties are directed to inform the Court how they would like to proceed within 2 weeks of the date of this Order.

SO ORDERED.

*/s/ Sanket J. Bulsara* Jan. 13, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

18